IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                                                        Case No. 23-CR-161 (MAD)

    vs.

TELESFORO DEL VALLE, JR.,

            Defendant.

# DEFENDANT TELESFORO DEL VALLE, JR.'S SENTENCING MEMORANDUM

**CAPEZZA HILL, LLP**
THOMAS A. CAPEZZA, ESQ.
ABBY MCCORMICK-FOLEY, ESQ.
*Attorneys for Defendant Telesforo Del Valle, Jr.*
30 South Pearl Street, P-110
Albany, New York 12207
518.478.6065 (phone)
tom@capezzahill.com

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

DEEP REMORSE AND IMMEDIATE ACCEPTANCE OF RESPONSIBILITY ........................1

DUE DILLIGENCE..............................................................................................................2

PUBLIC REMORSE AND ACCEPTANCE OF RESPONSIBILITY ...........................................4

SENTENCE OUTSIDE THE ADVISORY GUIDELINE RANGE
    APPLICATION OF THE SECTION 3553(a) FACTORS ..................................................4

    A.    Extraordinary Community Service ..........................................................6

    B.    Devotion to Faith .......................................................................................8

    C.    Devotion to Family ....................................................................................8

CONCLUSION.....................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases:**

*United States v. Booker*,
    543 U.S. 220 (2005) ............................................................................................................. 4

*United States v. Canova*,
    412 F.3d 331 (2d Cir 2005) ................................................................................................ 10

*United States. v Stewart*,
    433 F.3d 273 (2d Cir. 2006) ................................................................................................ 4

**Statutes & Other Authorities:**

18 U.S.C. § 3553 ........................................................................................................................ 5
18 U.S.C. § 3553(a) ...................................................................................................... 4, 5, 9, 10
18 U.S.C. § 3553(a)(2) ................................................................................................................ 5
18 U.S.C. § 3553(a)(4) ................................................................................................................ 4
18 U.S.C. § 3582 ........................................................................................................................ 5

*"When I did all of this, I knew what I was doing was illegal. I am ashamed and deeply regret what I have done. I am truly sorry."*

Telesforo Del Valle, Jr., November 16, 2023, Plea Hearing, page 26.

## PRELIMINARY STATEMENT

Telesforo Del Valle, Jr. grew up in a loving lower-income, stable household in the Bronx. Final Presentence Investigation Report ("PSR") ¶ 101. When he was 8 or 9, he remembers sleeping with two coats on because there was no heat in the building. *Id*. His parents were devoted to the community. His mother organized the "Air Force Cadets" and she and her son would try to convince troubled youth to join the group and purchase uniforms for them. PSR ¶ 100. When he was 7, his parents were honored for their community service at the National Puerto Rican Day Parade. PSR ¶ 101.

There are numerous reasons why this case is an outlier, beginning with the crime committed. Also, Mr. Del Valle is profoundly remorseful after having put his family at risk and disgracing the profession he loves. He has thought and will continue to think about this each day. He is also an individual of extraordinary compassion; he mentored a client charged by the Southern District of New York through his criminal case and then mentored that former client through law school, sitting for the bar, and now calls that former client a fellow member of the bar.

## DEEP REMORSE AND IMMEDIATE ACCEPTANCE OF RESPONSIBILITY

During our first meeting on April 25, 2023, Telesforo Del Valle, Jr. made clear that he did not want a trial. He was remorseful as he understood paying any money to Dionisio Figueroa was wrong. He tasked the undersigned with resolving the indictment by plea. PSR ¶ 72. In so doing,

1

he knew he would be forfeiting his license to practice law, his livelihood, and his ability to support the family he loved.[1]

This remorse was consistent with his earlier efforts to assist the government. Specifically, not long after the November 3, 2023, search, Mr. Del Valle worked with his then-counsel, Anthony L. Ricco, Esq., to search his law firm's records for responsive documents to a grand jury subpoena. The subpoena demanded records of payments made to Mr. Figueroa. This request was complicated by the fact that in addition to records of such payments, there would invariably be privileged records of other clients, particularly those being prosecuted by the U.S. Attorney's Office, Southern District of New York. By searching for responsive records with his own counsel, Mr. Del Valle helped the government avoid numerous conflicts in unrelated cases the Southern District was prosecuting. *Id*. Mr. Ricco's eleven-page cover letter titled *Response to Grand Jury Subpoenas* and dated March 7, 2023, is tantamount to a written pre-indictment confession (Ex. A). Indeed, the letter documented with charts: records, payments, dollar amounts, location where found, and clients. Significantly, the letter also included a statement of Mr. Del Valle's *mens rea*:

> Lastly, Telesforo Del Valle relied upon his secretary . . . for the organization of this filing system. In fact, as you can determine, many of the records, notes and receipts of payment from clients and/or payments to individuals such as . . . Dionisio Figueroa . . . at/with the knowledge, direction, instruction and approval of Mr. Del Valle.

(Ex. A at 8).

Considering Mr. Del Valle's cooperative efforts and his remorse, Probation properly recommended a reduction for acceptance of responsibility. PSR ¶¶ 69-74; ¶ 71 ("He reported

---

[1] Mr. Del Valle has retained separate disciplinary counsel who provided a transcript of the plea hearing to the relevant judicial bodies. Mr. Del Valle is taking prudent and ethical steps to wind down his practice and usher his clients to new counsel. Mr. Del Valle fully expects to receive a Final Order thereby terminating his license to practice law.

2

feelings of shame and is glad his parents are not alive to know of his arrest" and "he felt ashamed when telling his children that he committed a crime and is a convicted felon").

## DUE DILLIGENCE

Consistent with counsel's fiduciary duty, counsel researched the merits of each charge. The research took into consideration that Mr. Del Valle and Mr. Figueroa enjoyed a friendship that pre-dated the relevant period of the indictment. Indeed. Mr. Figueroa's family cooked food for Mr. Del Valle's family when Mr. Del Valle's wife was ill. Mr. Del Valle made payments for personal expenses including funds for Mr. Figueroa to bury his father in the Dominican Republic or money when Mr. Figueroa "was short on funds." PSR ¶ 69. Additionally, the cases Mr. Figueroa referred were for Spanish-speaking clients, some of whom "did not feel satisfied" with their court-appointed counsel and made a positive cultural and linguistic connection with Mr. Del Valle. PSR ¶ 56. Moreover, Mr. Del Valle zealously represented his clients consistent with his fiduciary duty. But as the trial evidence revealed, generosity between friends became an expectation and, in the process, a *quid pro quo* for purposes of bribery. (Count 3):

| Witness | Transcript | Description |
|---|---|---|
| Silva (Direct) | 401:2-3 (T3) | Email from Silva to Del Valle "Dionisio's wife called to ask if you left something for her to pick up today." |
| Silva (Direct) | 402:24-25 (T3) | Email from Silva to Del Valle "Dionisio called. He is traveling tomorrow and said that if you have anything for him, call Martha." |

For the same reasons, at least one object crime of the conspiracy was satisfied, and Mr. Del Valle was guilty of conspiracy (Count 1). Regarding the False Statements (Count 7), while Mr. Del Valle made significant efforts with the assistance of private counsel to correct the misstatement, particularly, the searches and resulting eleven-page letter (Ex. A), the Second Circuit is clear "that there is no safe harbor for recantation or correction of a prior false statement

that violates section 1001." *United States. v Stewart*, 433 F.3d 273, 318 (2d Cir. 2006) (citations omitted). Mr. Del Valle was guilty of making a false statement (Count 7). Finally, while Mr. Del Valle questioned the frailties of the government's Section 203 charge (Dkt. 98), he prioritized remorse and acceptance of responsibility rather than argue the technical point. He pled guilty to Count 5.

## PUBLIC REMORSE AND ACCEPTANCE OF RESPONSIBILITY

Consistent with his remorse and acceptance of responsibility, on November 16, 2023, Mr. Del Valle publicly plead guilty to all counts and provided the following allocution:

> From about 2011 up to about 2022, in the borough of Manhattan, New York, I agreed with a United States court employee to give and did give him money as compensation. I did this as an inducement to this court employee so that he may refer clients and their families to me. I represented those clients in criminal cases that were pending in the United States District Court for the Southern District of New York. On November 3rd, 2022, when I was asked by federal agents, I knowingly and willfully denied having records, written or otherwise, of the payments that I had made to this federal employee. When I did all of this, I knew what I was doing was illegal. I am ashamed and deeply regret what I have done. I am truly sorry.

Telesforo Del Valle, Jr., November 16, 2023, Plea Hearing, pages 25-26.

Moreover, as further evidence of Mr. Del Valle's remorse, counsel offered Mr. Del Valle's cooperation in the criminal trial. Specifically, in an email dated November 20, 2023, counsel wrote to the government attorneys to "circle back and gauge whether the government has an interest in Mr. Del Valle's cooperation at trial." (Ex. B).

## SENTENCE OUTSIDE THE ADVISORY GUIDELINE RANGE
## APPLICATION OF THE SECTION 3553(a) FACTORS

In *United States v. Booker,* 543 U.S. 220 (2005), the Court found the United States Sentencing Guidelines effectively advisory, instead of strictly binding. The Sentencing Reform Act, as revised by *Booker*, requires a sentencing court to consider Guideline ranges, *see* 18 U.S.C.

4

Section 3553(a)(4), but it permits to tailor the sentence considering other statutory concerns as well; *see* Section 3553(a), *Booker,* 543 U.S. at 245, 125 S. Ct., at 757. Thus, under *Booker*, sentencing courts must treat the Guidelines as just one of several sentencing factors set forth in 18 U.S.C. Section 3553(a).

The primary directive of Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2."

Section 3553(a)(2) states that such purposes are:

> (A)   To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B)   To afford adequate deterrence to criminal conduct;
> (C)   To protect the public from further crimes of the defendant; and
> (D)   To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, Section 3553(a) further directs sentencing courts to consider the following factors:

> (1)   The nature and circumstances of the offense, and the history and characteristics of the defendant;
> (2)   The kinds of sentences available;
> (3)   The need to avoid unwarranted sentence disparities among defendants with similar records, who have been found guilty of similar conduct; and
> (4)   The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553.

Other statutory sections also give the District Court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation:

> In determining whether, and to what extent, imprisonment is appropriate based on the Section 3553(a) factors, the sentencing judge is required to "recognize that imprisonment is *not* an appropriate means of promoting correction and rehabilitation." (emphasis added).

Probation recommends that the Court impose a sentence of 24 months imprisonment, concurrent on each count, followed by 1 year' supervised release, concurrent on each count. PSR

5

at 38. Probation reasoned, *inter alia*: "[t]he need for general deterrence in this case is a driving factor in the recommended sentence of imprisonment to deter other attorneys in this District and throughout the United States in committing similar offenses which damage judicial processes." PSR at 37. There are, however, reasons why this case is an outlier and a justification for a sentence that does not include imprisonment in a federal correctional institute. First, this case is about a fall from grace, and Mr. Del Valle is broken. He has put his family at risk and disgraced the profession he loves. He will think about this fall each day for as long as he lives. He can be no more remorseful. Next, he is an individual of extraordinary compassion. He has worked tirelessly to bring diversity to the bar and the bench; he mentored a client charged by the Southern District of New York through his criminal case and then mentored that former-client through law school, sitting for the bar, and now calls that former-client a fellow member of the bar. This is extraordinary; this is unique. Further, incarceration in a federal correctional institute will have profound collateral consequences on family members who have committed no wrongs. Finally, regarding deterrence, any lawyer looking at this case will see a publicly (if not nationally) humiliated and broken individual, whose family is at risk, whose career has ended in disgrace, and those consequences alone (considering the profound collateral impact) would be a deterrence to engage in similar conduct.

A. **Extraordinary Community Service**

Mr. Del Valle's extraordinary commitment to community service flows from his parents who were honored for their community service at the National Puerto Rican Day Parade in New York, New York when he was seven years old. PSR ¶¶ 101. He has a long impressive and documented history of volunteer service to the community in his capacity as an attorney. PSR ¶¶ 126-28. Specifically, he has served as:

- President of the Hispanic National Bar Association for the New York Region
- President of the Puerto Rican Bar Association for the State of New York
- Vice President of the New York State Association of Criminal Defense Attorneys
- Member of Departmental Disciplinary Committee for the Supreme Court, First Department
- Member of the Mayor's Committee on the Judiciary for the City of New York
- Member of the United States Magistrate Judge's Merit Selection Committee, E.D.N.Y.

As evidenced by the following letters, Mr. Del Valle worked to enhance diversity by assisting diverse members of the legal community. Indeed, Mr. Del Valle worked to help a client in a criminal case become a fellow member of the bar:

- Helped Ms. Rodriguez-Morick prepare for interviews when she applied for a federal judgeship; he shared resources to give her guidance. Mr. Del Valle "helped me because that's what he wanted-success for me because in his view it meant success for Latino lawyers." (Ex. C)

- Helped the Hon. Robert A. Sackett, Justice of the Supreme Court for the State of New York. Mr. Del Valle "spearheaded the Puerto Rican Bar Association Scholarship Fund, which during his tenure gave more than $250,000 in scholarship money to law students in financial need." (Ex. D)

- Helped Charles G. Walker, II, Esq. who was a defendant in a federal case in the Southern District of New York. With Mr. Del Valle's guidance, he attended law school, passed the New York bar, and is now admitted to practice law. (Ex. E)

- Helped Steven N. Gordon – "For more than forty years, Ted has dedicated his life to defending individuals, fighting for constitutional rights, and promoting diversity amongst the defense bar and our judiciary." (Ex. F)

- Helped Oliver S. Storch – "Through countless leadership positions, Ted is also a champion for justice outside the courtroom devoting countless hours mentoring and encouraging fellow Latinos and other qualified individuals from groups that had been traditionally underrepresented in the Bar or on the Federal and State Bench for over 40 years." (Ex. G)

- Helped Dolly Caraballo – "He acted as pro bono general counsel to the Puerto Rican Bar Association for years, and actively participated in many bar associations, working committees, community boards, mentorship programs and other volunteer organizations." (Ex. H)

- Helped Frank DeBellis – "Our former High School is in the South Bronx and the impression he made on those students [as a regular speaker] has been invaluable." (Ex. I)

- Helped Ret. Judge Edwin Torres who served as the first Puerto Rican assistant district attorney in New York City.  (Ex. J)

- Helped Hon. Ariel E. Belen (Ret.), Justice of the Supreme Court Kings County.  He was a young public defender in the 1980s when he joined the Puerto Rican Bar Association and met Ted Del Valle who worked tirelessly for decades within these bar groups to create opportunities for attorneys to participate and grow professionally in the legal community.  (Ex. K)

- Helped Hon. Javier E. Vargas – the Puerto Rican Bar Association Committee helped socioeconomically disadvantaged law students and was of great importance to Mr. Del Valle and central to his PRBA presidency, which speaks volumes of his concern for equality and the future generations.   (Ex. L)

- Helped Antonio Seda, Esq. – "he helped many people, created opportunities for others, and worked hard to advance diversity in the courts."  (Ex. M)

**B.     Devotion to Faith**

Moreover, Mr. Del Valle serves as a lector at Our Lady of Mount Carmel Church in Tenafly, New Jersey. His charitable works include paying for the air conditioning to be installed in the Church and paying three months mortgage payments for a friend whose spouse had died. PSR ¶ 128.  As evidenced by the following letter, Mr. Del Valle worked to help the less fortunate:

- Orlando Figueroa – "Throughout the years I've known Ted, he has been a dedicated parishioner of Our Lady of Mount Carmel Roman Catholic Church and has volunteered his time to help his community though service and fundraising for the less fortunate. Immediately after Hurricane Maria made landfall in Puerto Rico in September of 2017, Ted and his family launched a disaster relief operation to aid people of the island." (Ex. N)

- Jorge L. Hernandez, Esq. – "Teddy's presence as a volunteer parent at the school and our church was exemplary and constant."  (Ex. O)

- Alvaro Damiani – "Telesforo is a man of faith and is deeply involved in his church and the local community in which he resides."  (Ex. P)

- Marie Damiani – "Telesforo is a religious man, and has raised his children in the faith." (Ex. Q)

8

- Elia Migenes – "I was struck by his compassion, dedication, and eagerness to contribute his time and resources to the betterment of the community. Ted and his family made a remarkable impact on the school and church community." (Ex. R)

**C.   Devotion to Family**

Mr. Del Valle has always maintained strong familial relationships. He has funded the cost of education for all children in his care. PSR ¶ 103. He shares a close relationship with each of his five children. PSR ¶ 105. Significantly, Mr. Del Valle has four grandchildren, including a newborn grandson, and three granddaughters (ages 5, 4 and 10 months).

As evidenced by the following letters, Mr. Del Valle is cherished by his family and friends:

- Claudia Posada - "Teddy is an amazing loving husband to my best friend. Teddy is a wonderful father and stepfather, he took her kids as his and gave them love, care, and guidance." (Ex. S)

- Geidy Perez-Storch – "Ted adores ALL his children, and he has worked really hard to provide them with a good life but most importantly he has given them so much love." (Ex. T)

- Claudia C. Del Valle, wife (Ex. U)

- Alex Del Valle, son (Ex. V)

- Geovanny Ruiz Cano, son (Ex. W)

- Justin T. Del Valle, son (Ex. X)

- Matthew T. Del Valle, son (Ex. Y)

- Paola Ruiz, daughter (Ex. Z)

Probation properly calculated the total offense level of 18 and a criminal history category of I. PSR ¶ 137. Probation further recommends that the Court impose a sentence of 24 months imprisonment. PSR at 38. Pursuant to 18 U.S.C. § 3553(a), we respectfully request a six-level downward departure in consideration of Mr. Del Valle's extraordinary service to his community.

*See United States v. Canova*, 412 F.3d 331, 333 (2d Cir 2005). This would reduce his guidelines offense level to eleven, with a corresponding range of 8 to 14 months, Zone B.

## **CONCLUSION**

Taking into consideration all the applicable factors and considerations under 18 U.S.C. § 3553(a), Mr. Del Valle respectfully requests that the Court impose a sentence of probation or in the alternative home detention. Home detention will deprive Mr. Del Valle of his liberty, but not deprive his family of him thereby avoiding the collateral impact on his family.

Respectfully submitted,

Dated: March 19, 2024                               **CAPEZZA HILL, LLP**

By: _____
Thomas A. Capezza, Esq.
Bar Roll No. 503159
Abby McCormick-Foley, Esq.
Bar Roll No. 703342
30 South Pearl Street, P-110
Albany, New York 12207
Telephone:    518.478.6065
Fax:                518.407.5661